IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT MITCHELL,<br>    Plaintiff,<br>     v.<br><br>TOWNSHIP OF PEMBERTON, DAVID A. PATRIARCA, RICHARD PRICKETTE, KENNETH C. CARTER, THOMAS INGE, DIANNE P. STINNEY, SHERRY L. SCULL, CHRISTOPHER J. VAZ, TOWNSHIP OF PEMBERTON POLICE DEPARTMENT, LT. DAVID H. JANTAS, DANEILLE D. HANN, ANDREA BYRD, JOHN DOE PATROLMAN-1,<br>    Defendants. | CIVIL NO. 09-810(NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**

ROBERT MITCHELL
4609 "G" STREET
PHILADELPHIA, PA 19120

    Appearing *pro se*

DAVID ALLAN CLARK
JASON MEDINA
GLUCK WALRATH, LLP
428 RIVER VIEW PLAZA
TRENTON, NJ 08611

    On behalf of Defendants

**HILLMAN**, District Judge

    Pending before the Court is the motion of several of the Defendants[1] to dismiss Plaintiff's claims against them.  Also pending before the Court is Plaintiff's motion requesting

---

    [1]All the above-captioned Defendants, except for Danielle Hann and Andre Byrd, have moved to dismiss Plaintiff's claims against them.

permission to file an appeal out-of-time regarding a previous order of the Court. For the reasons expressed below, Defendants' motion will be granted, and Plaintiff's motion will be denied.

## BACKGROUND

Plaintiff is an African American male who resides in Philadelphia, Pennsylvania. During the afternoon of February 27, 2007 Plaintiff was parked in an apartment complex in Pemberton, New Jersey in his full size Chevy Silverado Extended Cab Pickup Truck. He describes his vehicle as "very fancy, distinctive and identifiable" which included custom oversized wheels, thirty-five percent (35%) grade window tint, and an out-of-state license plate. Plaintiff had dropped off his friend, identified only as "Dave," and was waiting for him to return to the vehicle. Plaintiff alleges that the apartment complex is comprised of predominantly low income minorities, and that it is known to the Pemberton Township police officers as a high profile area for domestic violence, drug trafficking, and gangs.

At some point during the afternoon, Plaintiff alleges that Pemberton Township Police Officer Danielle Hann ("Hann"), who is a Caucasian female, was patrolling around the apartment complex in a marked patrol car. Plaintiff alleges that Hann identified his vehicle as "out-of-place" because it is a nice truck in a poor neighborhood occupied at the time by two black males. Hann surveyed Plaintiff's vehicle, which he alleges was with

2

discriminatory purpose. While waiting for Dave to return, Plaintiff stepped out of his vehicle to speak with someone he recognized. Plaintiff gave his friend a handshake, embraced him, and returned to his vehicle. From where Hann was watching, Plaintiff alleges that she did not see any exchange of money or drugs. Plaintiff's friend Dave returned to the vehicle and they proceeded to exit the apartment complex, and Hann began to follow them.

At approximately 4:30 p.m., Plaintiff alleges that Hann conducted a wrongful vehicle stop motivated by racial profiling. Hann explained to Plaintiff that she pulled him over because of a broken taillight, the tint on his windows was too dark, and that a hanging air freshener on his rearview mirror was obstructing the driver's view. According to Plaintiff's Complaint, although he was pulled over for a simple traffic violation, he alleges that the actual purpose was to investigate illegal criminal activity not related to the simple traffic violation.

Hann then asked Plaintiff for his drivers license, and insurance and registration cards. Plaintiff produced his driver's license and insurance card, but did not have his vehicle registration card. Instead, Plaintiff offered his pink bill of sale from the car dealership in Philadelphia which included the registration number.

Thereafter, Hann asked Plaintiff some questions in regard to

3

what he was doing, where he was coming from, and where he was going. Plaintiff considered these questions "inappropriate and groundless" and believes they deprived him of his liberty. Hann returned to her car, and did not return to Plaintiff's vehicle for a period of time he alleges was "impermissibly prolonged."

Shortly thereafter, additional police officers, Andre Byrd ("Byrd"), who is African American, and John Does 1 and 2, were called to the scene. Hann informed Plaintiff that his vehicle was going to be towed because he did not have a registration card. In response, Plaintiff called the dealership which informed Byrd how Pennsylvania's vehicle registration process works.

Plaintiff alleges that the three Caucasian officers, Hann and John Does 1 and 2, then drew their weapons as a "show of force" and conspired to act inappropriately. Plaintiff believes that he and his passengers were put at great risk of harm. No arrests were made and Plaintiff was issued a non-moving traffic citation for having an obstruction in his rear view mirror.

Plaintiff claims that the officers failed to treat Plaintiff and his passengers fairly, did not explain why it was necessary to stop them or why it was necessary to draw and aim loaded weapons at them.

Prior to seeking redress from this Court, Plaintiff filed an Administrative Complaint with the Pemberton Township Police Department. The incident was investigated by Internal Affairs

4

which found that Officers Hann and Byrd did not commit any wrongdoing and that they followed the proper procedures.

Plaintiff, who is appearing *pro se*, then filed his Complaint with this Court. In addition to bringing this action against Officers Byrd and Hann, Plaintiff names as Defendants the mayor of Pemberton, David Patriarca; Township Council members Richard Prickett, Kenneth Cartier, Thomas Inge, Diane Stinney, and Sherry Scull; Township Administrator Christopher Vaz; and Police Chief David Jantas (collectively "Supervisory Defendants"). Plaintiff also names Pemberton Township and the Pemberton Township Police Department as Defendants.[2] On November 19, 2009, Defendants Byrd and Hann answered the Complaint. The Supervisory Defendants and Pemberton Township have moved to dismiss Plaintiff's claims against them. Plaintiff has opposed their motion.

## **DISCUSSION**

**A. Jurisdiction**

Because Plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

---

[2] All claims against the Pemberton Township Police Department must be dismissed as it is not a separate entity from the Township. See Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 n.4 (3d Cir. 1997) (a municipality and its police department are treated as a single entity for § 1983 purposes).

5

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007)

(quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

7

enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

**C.   Analysis**

The entirety of Plaintiff's 130-plus-page Complaint as to

the supervisory defendants and Pemberton Township is that they maintained an impermissible policy or custom regarding racial profiling, and that the implementation of that policy violated Plaintiff's constitutional rights when he as stopped on February 26, 2007.[3]  Defendants argue that this claim must be dismissed on several bases: (1) the supervisory defendants cannot be vicariously liable for the acts of other Pemberton Township employees; (2) Pemberton Township cannot be vicariously liable for the acts of their employees; (3) Plaintiff has failed to specify the alleged policy or custom; (4) Plaintiff has failed to specify the involvement of any of the individual defendants in creating or implementing such alleged policy; and (5) regardless of the other reasons, Plaintiff's claims against Richard Prickett, Kenneth Cartier, Thomas Inge, Dianne Stinney, Sherry Scull, and Christopher Vaz must be dismissed as a matter of law.  As explained below, the Court agrees with Defendants.

   **1.   Claims against Richard Prickett, Kenneth Cartier, Thomas Inge, Dianne Stinney, Sherry Scull, and Christopher Vaz**

As argued by Defendants, the claims against Township Council

---

[3]To the extent that Plaintiff has alleged a violation of his First Amendment rights, such claim must be dismissed.  Plaintiff has made no allegations that Defendants' alleged discriminatory law enforcement techniques were aimed to chill free speech or conduct. See Wilson v. New Jersey State Police, No. 04-1523 (MLC), 2006 WL 2358349, at *6 (D.N.J. Aug. 15, 2006) (citing Tenafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144, 158 (3d Cir. 2002).  Indeed, Plaintiff lodged his complaints regarding the incident with Pemberton Township's Internal Affairs Unit.

members Richard Prickett, Kenneth Cartier, Thomas Inge, Dianne Stinney, and Sherry Scull must be dismissed because these defendants have no policymaking authority.  Pemberton Township is organized under the mayor-council form of the government, see N.J.S.A. 40:69A-31 et seq. (the "Faulkner Act"), where the mayor of Pemberton Township is responsible for the operations of government and ensuring the laws are enforced, and the Township Council is responsible for its legislative body, see N.J.S.A. 40-69A-32.  "Stated generally, . . . the mayor-council plan under the Faulkner Act vests in the mayor the responsibility for administrative and executive operations of the municipality, while reposing the ultimate legislative and concomitant investigative responsibilities in the council."  Municipal Council of City of Newark v. James, 873 A.2d 544, 548 (N.J. 2005).  Thus, because any alleged racial profiling policies or customs arise from the administrative and executive operations of the municipality (the town and police department being one-in-the-same), and not from the legislative branch,[4] Plaintiff's claims against these

---

[4]The definitions of "policy" and "custom" in this context show that the legislative branch is not involved in the creation of such policies and customs.  See Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (internal citation omitted) (explaining that a policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict"); Andrews v. City of Phila, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal citation omitted) (explaining that a custom is considered a course of conduct, not authorized by law, that is "so permanent and well settled as to virtually constitute law").

Defendants fail as a matter of law.[5]

With regard to Christopher Vaz, Township Administrator, the claims against him must be dismissed because he was not employed by the Township until after February 26, 2007, and, thus, could not have had any involvement in the creation or implementation of the alleged racial profiling policies Plaintiff claims he was subjected to on that day.

### 2. Claims against Mayor David Patriarca, Police Chief David Jantas, and Pemberton Township

Plaintiff alleges that Pemberton Township, the mayor and police chief maintain a policy or custom of racial profiling, and it was pursuant to that policy or custom that Officer Hann inappropriately questioned Plaintiff, took an unreasonable time to check on his identification, and, along with Officer Byrd, drew their weapons in a "show of force."[6]

---

[5] Even if Plaintiff's claims could be maintained against these Defendants, as explained below with regard to Plaintiff's claims against the mayor, police chief, and the town, they substantively fail to state a valid claim because Plaintiff has not alleged, other than generally stating the same allegations for each of the individual defendants, any specific conduct by the individual defendants in the creation or implementation of any racial profiling policy.

[6] It does not appear that Plaintiff refutes Officer Hann's reasons for stopping Plaintiff's vehicle for a broken taillight, excessive tinting, and obstruction of the driver's view due to an air freshener dangling from the rear view mirror. He contends, however, that these are minor infractions that demonstrate that Officer Hann's true motivation was Plaintiff's race. It also does not appear that Plaintiff is challenging the legitimacy of

In order to maintain a claim for a policy or custom of racial profiling that results in a deprivation of a constitutional right, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  The Third Circuit has identified three situations where the acts of a municipal employee may be deemed the result of a custom or policy: (1) an official with policymaking authority promulgates a statement of policy and the "act complained of is simply an implementation of that policy;" (2) no rule has been announced but the policymaker violates federal law; and (3) where there is an obvious need to take some action and the policymaker is said to be deliberately indifferent.  Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).[7]

Here, Plaintiff repeats the essentially identical allegation against each of the Defendants: that they "executed, represented, established a implemation (sic) of a[] specific official policy, custom and usage in racial profiling in violation of the

---

the citation he was issued for view obstruction.

[7]Although no *respondeat superior* liability is supportable in a § 1983 claim, a municipality or individual policymaker may be liable for another municipal employee's implementation of an identifiable policy or custom that caused a constitutional injury.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Carter v. City of Phila, 181 F.3d 339, 356 (3d Cir. 1999).

12

constitution that this specific racial profiling policy, custom and usage is responsible for a deprivation of rights protected by the constitution," and that they "knew or should have known" of such policy and custom.  (Compl. at 4-A-L.)  This is insufficient to state a valid claim against the Township, the mayor and the police chief.

Even taking as true Plaintiff's recitation of how the events surrounding his stop unfolded, and that the officer's motivation for pulling him over, and the resulting delay and "show of force," were due solely to his race, Plaintiff has not articulated any connection between the officer's alleged racial profiling of Plaintiff and a specific policy or custom regarding racial profiling promulgated by the Township.  Plaintiff has also failed to allege any specific act, or failure to act, by the mayor or police chief that could connect them to any racial profiling policy or custom.  Tellingly, Plaintiff repeatedly alleges that these policymakers "knew or should have known" about such policy or custom.  Actual knowledge, or imputed knowledge, of a policy or custom does not rise to the requisite level of an "affirmative proclamation" or "acquiescence" to that policy or custom.  See, e.g., Watson v. Abington Twp., 478 F.3d 144, 156 (3d Cir. 2007) (explaining that a policy is demonstrated "when a decisionmaker . . . issues an official proclamation, policy, or edict," and that a "custom may be established by proving knowledge of, *and*

13

acquiescence to, a practice" (emphasis added) (citations omitted)).

A claim for racial profiling is typically advanced under two theories--a claim for "selective enforcement," see State v. Ball, 887 A.2d 174 (N.J. Super. Ct. App. Div. 2005) ("Racial profiling is, in essence, a claim of selective prosecution."), or a claim for an equal protection violation, Bradley v. U.S., 299 F.3d 197, 205 (3d Cir. 2002) ("To make an equal protection claim in the profiling context, [a plaintiff is] required to prove that the actions of [] officials (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose.").[8]  Although it is

---

[8] A racial profiling claim may also be couched in terms of a failure to train claim.  A failure to train claim may amount to a policy or custom where the need of the municipality to control the actions of its agents "is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 582 (3d Cir. 2004) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).  To establish that a municipality's failure to train amounted to deliberate indifference, it must be shown that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  Carter, 181 F.3d at 357.  To show supervisory liability for the failure to train or supervise, a plaintiff must show that the supervisor is the "moving force [behind] the constitutional violation" or "exhibit deliberate indifference to the plight of the person deprived."  Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing Canton v. City of Harris, 489 U.S. 378, 389 (1989)).

In his lengthy complaint, Plaintiff makes one reference to "failure to train": "Plaintiff states that this is an emotional

14

not clear which type of claim Plaintiff is advancing in this case, what is clear is that "racial profiling" is a legal term of art that is a description of a particular policy or custom[9] that either results in selective enforcement or an equal protection violation.  The use of the term in a complaint is not an allegation of fact.  Simply stating that such a policy or custom exists, or that because the officers stopped Plaintiff based on his race they must have been doing so pursuant to a racial profiling policy or custom, is not sufficient to meet the proper federal court pleading standards. See Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950) (explaining that a court must disregard any legal conclusions); see also Hutchinson v. Dinatale, 2010 WL 502976, *4 (D.N.J. 2010) ("Other than these minimal facts, all of Plaintiff's allegations are legal conclusions--the arrest was accompanied by an unlawful search, based on racial profiling, and made without probable cause.").

---

traumatic experience deliberate indifference to the rights of Afro-Americans . . . 'Failure to Train.'" (Compl. at 6-M.)  It is not clear whether Plaintiff has intended to advance an independent failure to train claim.  If Plaintiff has, such a claim fails for the same reasons as his policy and custom claim.  If Plaintiff wishes to assert this claim in the future, he must do so consistent with the Court's direction regarding his ability to replead his policy and custom claim.

[9]See, e.g., State of New Jersey Div. of State Police v. Sobolusky, 2007 WL 1891536, *5 (N.J. Super. Ct. App. Div. July 3, 2007) ("In this State, no other single issue has served to undermine the public's trust in the State Police as the now defunct, infamous practice of racial profiling.")

The Supreme Court's and, accordingly, the Third Circuit's recent clarification of the standard for reviewing a complaint to determine whether a valid claim has been advanced instructs that a plaintiff, such as Plaintiff in this case, cannot merely claim that a racial profiling policy or custom caused a constitutional violation, without a single fact, aside from the Plaintiff's particular incident, to support such a claim. This rule prevents a defendant from being subjected to a plaintiff's fishing expedition through discovery in the hope that facts will be unearthed to support plaintiff's speculation. See, e.g., Giovanelli v. D. Simmons General Contracting, 2010 WL 988544, *5 (D.N.J. 2010) ("Discovery cannot serve as a fishing expedition through which plaintiffs search for evidence to support facts they have not yet pleaded."); Ogbin v. Citifinancial Mortg. Co., Inc., 2009 WL 4250036, *2 (D.N.J. 2009) (same).

Despite this, the Court recognizes that Plaintiff's racial profiling claim against the mayor, the police chief and the town may not be foreclosed to him in the future, for two reasons. First, *pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Estelle v. Gamble, 429 U.S. 97, 107 (1976), and in the case of *pro se* civil rights complaints, Third Circuit case law "supports the notion that . . . district courts must offer amendment--irrespective of whether it is requested--when

16

dismissing a case for failure to state a claim unless doing so would be inequitable or futile," Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Second, information concerning a town's customs or policies, the policymakers' motivations behind such policies, or the facts surrounding police department customs, are typically unavailable to an outsider, so that pleading facts to sufficiently advance a racial profiling claim may be impossible without some assistance through litigation tools such as request for admissions, interrogatories, document requests, and depositions.

With these two considerations in mind, the Court will not grant Plaintiff leave to amend his complaint with regard to his claims against the mayor, police chief and town, as it does not appear that during the time since Plaintiff filing his original complaint, he has gathered the requisite factual basis to support his racial profiling claim.  The Court notes, however, that Plaintiff's case remains pending, and discovery has commenced, as to Plaintiff's constitutional violation claims against the two officers invovled in the February 2007 stop.  Should Plaintiff, by developing his case against the officers, discover facts to support that the officers were acting pursuant to a racial profiling policy or custom promulgated by the mayor or the police chief, the Court will entertain a motion for leave to amend the

17

complaint at that time.[10] As it stands now, Plaintiff's claims are too specious to go forward.

**D.    Plaintiff's "Motion for Leave to File Extension for Rehearing out-of-time and/or Second Alternate Writ of Certiorari and Motion to File Exhibits for Rehearing"[11]**

Plaintiff has filed a motion requesting that he be permitted to file an untimely appeal of the Court's November 23, 2009 Order denying his motion for reconsideration of the Court's denial of his request for a restraining order against the Defendants.[12] (See Docket No. 20.)  A party is permitted to file an appeal of a district court's interlocutory decision prior to the resolution of the entire case, see 28 U.S.C. § 1292, and a party is required to

---

[10]To the extent Plaintiff is alleging violations to his constitutional rights under § 1983 against the mayor and police chief in their official capacities, such claims fail.  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

[11]In addition to relief regarding an appeal, Plaintiff's motion requests that he be permitted to file certain exhibits referred to as "Bulk Filing."  These papers are already part of the record, even though they are not on the electronic docket due to their excessive volume.  (See Docket No. 19.)

[12]To the extent that Plaintiff is asking this Court to reconsider its decision on Plaintiff's motion for reconsideration, such successive motion is prohibited.  L. Civ. R. 7.1(I).

18

do so within 30 days of that order, <u>see</u> Fed. R. App. P. 4(a)(1). If, however, "'matters are adjudged by an interlocutory decree that is subject to immediate appeal, and no appeal is taken, they are not foreclosed, but are subject to review on appeal from the final judgment.'" <u>Ernst v. Child and Youth Services of Chester County</u>, 108 F.3d 486, 492-93 (3d Cir. 1997) (quoting 9 Moore's Federal Practice § 110.18, at 194 (1996) and also citing <u>Victor Talking Mach. Co. v. George</u>, 105 F.2d 697, 699 (3d Cir. 1939) ("A party, feeling himself aggrieved by an interlocutory decree of the kind mentioned, is given the right to appeal without awaiting a final decree, upon condition that he take his appeal within thirty days. The statute, however, does not require an aggrieved party to take such an appeal in order to protect his rights, and, where it is not taken, does not impair or abridge in any way the previously existing right upon appeal from the final decree to challenge the validity of the prior interlocutory decree. The aggrieved party may, therefore, await the final determination of the case and upon appeal therefrom raise all questions involved in the case.").

Based on the foregoing, the Court cannot grant Plaintiff his requested relief, for two reasons. First, Plaintiff did not need permission from the Court to appeal the interlocutory order, as he filed his motion on December 17, 2009, which was still within the 30-day window of the Court's November 23, 2009 Order. Thus, Plaintiff could have simply appealed that decision to the Third

Circuit Court of Appeals instead of requesting permission from this Court.  Second, Plaintiff may still appeal the Court's denial of Plaintiff's request for a restraining order following the final resolution of his case.  Accordingly, he Court will deny as moot Plaintiff's motion.

## **CONCLUSION**

For the reasons expressed above, Plaintiff's claims against all Defendants, except for the two police officer Defendants who have not moved for the dismissal of Plaintiff's claims against them, must be dismissed.  Plaintiff's request for relief relating to his dissatisfaction with the Court's November 23, 2009 Order is denied.  An appropriate Order will be entered.


Date: June 17, 2010                    s/ Noel L. Hillman

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.